## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

American Medical Association, on behalf  )
of itself and its members; Access  )
Independent Health Services, Inc., d/b/a  )
Red River Women's Clinic, on behalf of  )
itself, its physicians, and its staff; and  )   **ORDER GRANTING MOTIONS**
Kathryn L. Eggleston, M.D.;  )   **TO INTERVENE**
  )
      Plaintiffs,  )
  )
     vs.  )
  )   Case No. 1:19-cv-125
Wayne Stenehjem, in his official capacity  )
as Attorney General for the State of North  )
Dakota; and Birch Burdick, in his official  )
capacity as State Attorney for Cass County,  )
as well as their employees, agents, and  )
successors;  )
  )
      Defendants.  )

---

Before the Court are two motions to intervene. Dakota Hope Clinic; David Billings, M.D.; Women's Pregnancy Center; Eric Pearson, M.D.; North Dakota Physicians for Truth and Accuracy for Informed Consent; and National Institute of Family and Life Advocates (collectively, the "Pregnancy Center") moved to intervene as defendants on August 22, 2019. See Doc. No. 54. The Defendants filed a response in support of the motion on September 5, 2019. See Doc. No. 100. The Plaintiffs filed a response in opposition to the motion on September 13, 2019. See Doc. No. 104. The Pregnancy Center filed a reply brief on September 23, 2019. See Doc. No. 108.

Heartbeat International, Inc. ("Heartbeat") moved to intervene as a defendant on August 30, 2019. See Doc. No. 93. The Defendants filed a response in support of the motion on September 5, 2019. See Doc. No. 101. The Plaintiffs filed a response in opposition to the motion on September 13, 2019. See Doc. No. 103. Heartbeat filed a reply brief on September 20, 2019. See Doc. No.

107.  For the reasons set forth below, the motions to intervene are granted.


## I.    <u>BACKGROUND</u>

On June 25, 2019, the American Medical Association, Access Independent Health Services, Inc., d/b/a Red River Women's Clinic, and Kathryn L. Eggleston, M.D. (collectively, the "Plaintiffs"), filed a complaint against North Dakota Attorney General Wayne Stenehjem and Cass County State's Attorney Birch Burdick (collectively, the "State"), in their official capacities, challenging the constitutionality of House Bill No. 1336 ("H.B. 1336") and N.D. Cent. Code § 14-02.1-02(11)(a)(2).  <u>See</u> Doc. No. 1.

North Dakota Governor Doug Burgum signed H.B. 1336 into law on March 22, 2019.  <u>See</u> Doc. No. 36-1.  Section 1 of H.B. 1336 amends and reenacts N.D. Cent. Code § 14-02.1-02(11)(b)(5) to require:

> The woman is informed, by the physician or the physician's agent, at least twenty-four hours before the abortion:
>
> . . .
>
> (5)   That it may be possible to reverse the effects of an abortion-inducing drug if she changes her mind, but time is of the essence, and information and assistance with reversing the effects of an abortion-inducing drug are available in the printed materials given to her as described in section 14-02.1-02.1.

<u>Id.</u>  Section 2 of H.B. 1336 creates and enacts a new subdivision to subsection 1 of N.D. Cent. Code § 14-02.1-02.1, providing the state department of health shall publish:

> Materials including information it may be possible to reverse the effects of an abortion-inducing drug but time is of the essence.  The materials must include information directing the patient where to obtain further information and assistance in locating a medical professional who can aid in the reversal of abortion-inducing

drugs, such as mifepristone and misoprostol.

Id.  On September 10, 2019, the Court issued a preliminary injunction, preventing the State from enforcing H.B. 1336 until final resolution of the Plaintiffs' claims.  See Doc. No. 102.

N.D. Cent. Code § 14-02.1-02(11)(a)(2) requires the physician performing an abortion (or the referring physician or physician's agent) to tell the woman receiving an abortion that "[t]he abortion will terminate the life of a whole, separate, unique, living human being."

The Pregnancy Center seeks to intervene to defend the constitutionality of N.D. Cent. Code § 14-02.1-02(11)(a)(2).  Two of these intervenors are pregnancy help centers.  One, Dakota Hope Clinic, operates a pregnancy help center in Minot, North Dakota.  The other, Women's Pregnancy Center, operates a pregnancy help center in Grand Forks, North Dakota.  These centers provide counseling and assistance to pregnant mothers.  David Billings, M.D., is the medical director of Dakota Hope Clinic, and Eric Pearson, M.D., is the medical director of the Women's Pregnancy Center.  North Dakota Physicians for Truth and Accuracy for Informed Consent, according to the intervenors, is a group of 113 physicians who are licensed to practice medicine in North Dakota, and seek to "protect their individual interests as physicians who counsel pregnant mothers."  See Doc. No. 71, p. 11.  The National Institute of Family and Life Advocates (NIFLA), according to the intervenors, is a national organization which provides legal counsel, education, and training to pregnancy help centers across the country.  Dakota Hope Clinic and Women's Pregnancy Center are affiliate pregnancy help centers of NIFLA.

Heartbeat seeks to intervene as a defendant to defend the constitutionality of both laws, H.B. 1336 and N.D. Cent. Code § 14-02.1-02(11)(a)(2).  According to Heartbeat, it is the largest network of pregnancy resource center affiliates in the world, and as the center of operations for the

international Abortion Pill Reversal Network, Heartbeat claims it "will likely be involved in the process almost every time a pregnant woman in North Dakota wishes to follow up on the information provided in [H.B. 1336]." See Doc. No. 93, p. 7.

## II.   LEGAL DISCUSSION

Rule 24 of the Federal Rules of Civil Procedure governs intervention in actions pending in the federal courts.  A party is entitled to intervene as of right under Rule 24(a) or is permitted to do so under subsection (b).  The party's interest under a Rule 24(a) application must be such that the party will be able to meet the Article III standing requirements.  Mausolf v. Babbitt, 85 F.3d 1295, 1300-01 (8th Cir. 1996).  Lastly, the application must be made in a timely fashion.  Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 997-98 (8th Cir. 1993).  The intervenors contend they are entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a).  Alternatively, they seek permissive intervention pursuant to Fed. R. Civ. P. 24(b).

### A.   ARTICLE III STANDING

The prospective intervenors must have Article III standing to litigate their claims in federal court.  Mausolf, 85 F.3d at 1300.  "To show Article III standing, a [party] has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision."  Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  "An injury in fact is a 'direct injury' resulting from the challenged conduct."  McClain v. Am. Econ. Ins. Co., 424 F.3d 728, 731 (8th Cir. 2005).  The proposed intervenor "must

4

show that he or she 'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . ." Steger, 228 F.3d at 892 (alterations and omissions in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).  Intervenors have standing if the court's decision will deny them a benefit.  See Oti Kaga, Inc. v. S.D. Hous. Dev. Auth., 342 F.3d 871, 878 (8th Cir. 2003) (holding that improper denial of tax credits was an injury-in-fact).

The Court finds the intervenors can meet the injury-in-fact element.  In his affidavit, Dr. Billings states,

> In order for Dakota Hope to fulfill its mission in serving pregnant mothers, it relies upon donors to make financial contributions and donations to support our work, and support directly to the mothers themselves.  Dakota Hope's reputation is essential. Any finding of deception, false disclosures and the like will have a direct negative impact on its finances and Dakota Hope will lose its effectiveness. It can prevent Dakota Hope to fulfill its mission.  The same is true of myself as a physician, and a certified ob/gyn.  We physicians live and breathe based upon our reputation and the loss of confidence in us will threaten our financial well-being and reduce our ability to attract the clients we are dedicated to serve.  It could damage our very mission and purpose of our practicing our profession.

See Doc. No. 74, p. 6.  Dr. Pearson similarly states,

> If the plaintiffs were to succeed in this lawsuit, my reputation and the reputation of Women's Pregnancy Center would be severely damaged.  If plaintiffs' efforts succeed, it would mean that they persuaded a court that the factual information that I have been communicating to my pregnant patients in my medical practice and which has been routinely provided to pregnant mothers at Women's Pregnancy Center is either false, misleading, or irrelevant to their decision-making.  I can think of few things that would be more damaging to a physician's reputation than a court decision which holds that he has been lying to or misleading his patients for years. Similarly, such a court decision would virtually destroy the reputation of Women's Pregnancy Center which would then be pilloried as providing false information to the pregnant mothers who seek their counsel. . . .
>
> Any negative impact to my reputation or to the reputation of Women's Pregnancy Center would necessarily damage our financial interests.  As a practicing physician,

5

my reputation is my life blood.  If a court were to hold that I have been lying to or misleading my patients, I would not be able to attract new patients, and my continued relationship with existing patients would be severely threatened.  In addition, I would be significantly hampered in my efforts to treat my patients, as they would necessarily lose confidence in my advice.  Any damage to the reputation of Women's Pregnancy Center would also significantly damage its financial interests.  If a court determines that the pregnancy help center has been misleading its clients, few pregnant mothers will seek counsel there.  Women's Pregnancy Center cannot continue to operate if it cannot continue to attract pregnant mothers to serve.  Further, because nearly all of the services provided by Women's Pregnancy Center are completely free, it is entirely donor funded.  Women's Pregnancy Center relies upon its good reputation to attract donors to support its work. . . .

See Doc. No. 76, pp. 8-9; see also Doc. No. 75, p. 5 (Declaration of Jill Chandler, the Executive Director of Women's Pregnancy Center); Doc. No. 77, p. 4 (Declaration of Louise Murphy, M.D., the Chair of the Executive Board of the North Dakota Physicians for Truth and Accuracy for Informed Consent); Doc. No. 80, p. 5 (Declaration of Thomas Glessner, the Founder and President of NIFLA) (stating that "the overwhelming majority of pregnancy center services are provided free of charge, so all of our member centers are donor funded.  Therefore, NIFLA centers rely upon their good reputation to attract donors and remain operational.").

In its reply brief, Heartbeat states, "APR Network has no fundamental function, purpose, or service besides assisting women who wish to reverse the abortion-pill process.  For this Court to rule to any extent that abortion-pill reversal is 'misleading,' 'untruthful,' or unsound medicine would be extremely damaging to Heartbeat."  See Doc. No. 107, p. 7.  Accordingly, the Court finds the intervenors have adequately alleged  they are in immediate danger of sustaining a "direct injury" if H.B. 1336 and N.D. Cent. Code § 14-02.1-02(11)(a)(2) are permanently enjoined.

Further, the Court finds there is a causal relationship between the constitutionality of H.B. 1336 and N.D. Cent. Code § 14-02.1-02(11)(a)(2), and the intervenors' injuries-in-fact because the

alleged harms will only occur if the disclosures contained in the laws are no longer provided. If the Court were to find these laws unconstitutional, the Court will enjoin enforcement of the laws, which likely means the disclosures will not be provided. If, however, the Court were to rule these laws constitutional, the Pregnancy Center and Heartbeat would assume no injuries. Thus, a favorable ruling from the Court would redress the intervenors' alleged injuries. Accordingly, the Pregnancy Center and Heartbeat satisfy the elements of Article III standing.

### B.   INTERVENTION AS OF RIGHT

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides for intervention as a matter of right by an interested third party who, on timely motion:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

The Eighth Circuit requires that an application for intervention must satisfy the following tri-partite test in order to intervene pursuant to Fed. R. Civ. P. 24(a)(2): "1) the party must have a recognized interest in the subject matter of the litigation; 2) that interest must be one that might be impaired by the disposition of the litigation; and 3) the interest must not be adequately protected by the existing parties." United States v. Union Elec. Co., 64 F.3d 1152, 1160 (8th Cir. 1995). It is well-established that Rule 24 is to be given a liberal construction. Courts must assess a motion to intervene "in a light most favorable to the prospective intervenor," "construe the motion in favor of the prospective intervenor," and accept all material allegations in the motion as true. Nat'l Parks Conservation Ass'n v. United States Envtl. Prot. Agency, 759 F.3d 969, 973-75 (8th Cir. 2014).

### 1.  **Timeliness**

"Whether a person moves for 'intervention of right' or for 'permissive intervention,' the motion must be timely."  <u>Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.</u>, 643 F.3d 1088, 1093 (8th Cir. 2011).  The Eighth Circuit has articulated factors that should be considered by the Court when determining whether a motion to intervene is timely: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties."  <u>Id.</u> at 1094.

The Court finds these factors weigh in favor of the intervenors.  The Pregnancy Center and Heartbeat moved to intervene approximately two months after this lawsuit was filed, and at a time when the litigation has consisted only of Plaintiffs' complaint, Defendants' answers, and briefing on Plaintiffs' motion for preliminary injunction.  Because there was little delay in seeking intervention, the existing parties will suffer little to no prejudice.  Accordingly, the motions to intervene are timely.

### 2.  **Interests of Intervenors**

"[The] interest identified must be more than peripheral or insubstantial; the applicant must assert a 'significantly protectable interest.'"  <u>Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action</u>, 558 F.2d 861, 869 (8th Cir. 1977).  "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation."  <u>Union Elec. Co.</u>, 64 F.3d at 1162.  "The court should be mindful that the interest test is primarily a practical guide to disposing of lawsuits by involving as

many apparently concerned parties as is compatible with efficiency and due process." See id. at 1162 (internal quotations and alterations omitted).

As discussed above, the Pregnancy Center and Heartbeat have an interest in the constitutionality of H.B. 1336 and N.D. Cent. Code § 14-02.1-02(11)(a)(2). Specifically, they have potential reputational and financial interests at stake, as articulated by the affidavits and briefs submitted in support of the motions to intervene. See Planned Parenthood Minn., N.D., S.D. v. Alpha Ctr., 213 F. App'x 508, 510 (8th Cir. 2007) (concluding pregnancy centers defending a South Dakota law which included a nearly identical provision to N.D. Cent. Code § 14-02.1-02(11)(a)(2) had "potential reputational and financial interests . . . which th[e] litigation could impair.").

### 3.   Impairment of the Interests

 "Rule 24(a)(2) requires only that disposition of the action 'may as a practical matter impair or impede the applicant's ability to protect [its] interest.'" Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Associates, Inc., 60 F.3d 1304, 1307 (8th Cir. 1995) (alteration in original). The Court finds an unfavorable ruling may impair the Pregnancy Center and Heartbeat's reputational and financial interests. See Alpha Ctr., 213 F. App'x at 510.

### 4.   Adequacy of Representation

A prospective intervenor "bears the burden of showing that [its] interests are not adequately represented by [the] existing parties." Chiglo v. City of Preston, 104 F.3d 185, 187 (8th Cir. 1997). A prospective intervenor typically carries only a minimal burden of showing that existing parties do not adequately represent its interests. Mille Lacs Band of Chippewa Indians, 989 F.2d at 999-1000;

Mausolf, 85 F.3d at 1303.  However, a prospective intervenor has a heavier burden when an existing party has an obligation to represent its interests.  Mille Lacs, 989 F.2d at 999-1000.  Under the concept of *parens patriae* (parent of the country)*,* if an arm or agency of the government is a party in litigation involving a matter of sovereign interest, the government is presumed to represent the interest of all its citizens.  Id. at 1000; Nat'l Parks, 759 F.3d at 976.  The *parens patriae* presumption only applies to the extent the prospective intervenor's interests coincide with the public interest.  Nat'l Parks, 759 F.3d at 977.  If the prospective intervenor stands to lose or gain from the lawsuit in a way different than the public at large, the *parens patriae* presumption does not apply.  Chiglo, 104 F.3d at 188.  Even when such a presumption of adequate representation arises on this basis, it may be rebutted by showing that the prospective intervenor's interest cannot be subsumed within the shared interest of state.  Mille Lacs, 989 F.2d at 1000-01; Mausolf, 85 F.3d at 1303.

In this case, the interests of the Pregnancy Center and Heartbeat are narrower than the public interest and cannot be subsumed within the broad public interest represented by the State.  The State and the intervenors share the common legal goal of protecting H.B. 1336 and N.D. Cent. Code § 14-02.1-02(11)(a)(2), but their interests in the law are different.  The State has but a broad interest in protecting its laws from federal constitutional challenges and must represent the varied interests of all its citizens.  In addition, the State agrees that the Pregnancy Center and Heartbeat should be allowed to intervene and concedes it is unable to adequately represent their interests.

The Court also finds *Alpha Center* instructional, if not controlling, on this issue.  In *Alpha Center*, the Eighth Circuit reversed the district court's finding that the state could adequately represent the pregnancy centers' interest in defending a South Dakota law which included a nearly identical provision to N.D. Cent. Code § 14-02.1-02(11)(a)(2), stating,

> The issues [intervenors] raise in their petition for rehearing are different from those which the state officials raise, and the interests which they have at stake in this litigation are not identical to those which the state seeks to protect. At this point in the litigation we see merit in appellants' contention that the state officials cannot adequately represent their interests.

Alpha Ctr., 213 F. App'x at 510. The Plaintiffs have failed to adequately distinguish *Alpha Center* from this case. Accordingly, the Court finds the State's presence does not adequately protect the Pregnancy Center and Heartbeat's reputational and financial interests. The intervenors have satisfied all the elements of Rule 24(a)(2), and are entitled to intervene as a matter of right.

### C.   PERMISSIVE INTERVENTION

Alternatively, the Pregnancy Center and Heartbeat seek permissive intervention under Rule 24(b). Rule 24(b)(1)(B) permits the court to grant intervention upon timely motion when the applicant "has a claim or defense that shares with the main action a common question of law or fact." Whether to grant permissive intervention rests within the court's discretion. South Dakota ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 787 (8th Cir. 2003). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." Id.

As discussed above, the motions to intervene are timely. The intervenors also have a question of law in common with the underlying litigation in that they seek to defend the constitutionality of H.B. 1336 and N.D. Cent. Code § 14-02.1-02(11)(a)(2). Further, considering the early stage of the litigation, the timeliness of the motion, and that discovery has not concluded, intervention will not unduly delay the litigation. The Court disagrees with the Plaintiffs that they will be unduly prejudiced by allowing the intervenors to defend in this action. See Doc. No. 86

(Declaration of Harold Cassidy, attorney for the Pregnancy Center) (stating, "While each intervenor may have the right to file separate motions, briefs, and engage in discovery, all of the intervenors we represent wish to ensure that the litigation is not overburdened with many legal representations. Counsel for the intervenors shall address all of the issues relating to each of the intervenors and their divergent and unique interests with one representation."). Accordingly, the Court, in its broad discretion, also grants the Pregnancy Center and Heartbeat permission to intervene as defendants under Fed. R. Civ. P. 24(b)(1)(B).

### III.   <u>CONCLUSION</u>

The Court concludes both the Pregnancy Center and Heartbeat have satisfied the requirements for intervention as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. The Court also grants the Pregnancy Center and Heartbeat permissive intervention under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure. Accordingly, the motions to intervene (Doc. Nos. 54 and 93) are **GRANTED**. Intervenors will have fourteen (14) days from the date of this order to file their respective answers to the Plaintiffs' complaint.

**IT IS SO ORDERED.**

Dated this 26th day of November, 2019.

*/s/  Daniel L. Hovland*_____
Daniel L. Hovland, District Judge
United States District Court
